IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2007

## MARSHALL DONNELL JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 57470     James K. Clayton, Jr., Judge**

---

**No. M2006-02281-CCA-R3-PC - Filed November 15, 2007**

---

The petitioner, Marshall Donnell Johnson, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred by finding that he received effective assistance of trial counsel and entered his guilty plea knowingly and voluntarily. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Howard W. Wilson, Murfreesboro, Tennessee, for the appellant, Marshall Donnell Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In October 2003, the Rutherford County Grand Jury indicted the petitioner on one count of burglary other than a habitation, a Class D felony, and one count of theft under $500, a Class A misdemeanor. On August 27, 2004, the petitioner pled guilty to the burglary count of the indictment in exchange for a ten-year sentence as a Range III, persistent offender in the Department of Correction, with the trial court to later determine whether the sentence was to be served concurrently or consecutively to the petitioner's Sumner County convictions. The judgment in this case reflects the petitioner's sentence was ordered to be served consecutively to other sentences in Williamson, Davidson, and Sumner Counties, which he was serving on parole or probation at the time of the instant offense. It was mandatory that these sentences were ordered consecutive, pursuant to

Tennessee Code Annotated section 40-35-115(b)(6). Pursuant to the terms of the plea agreement, the theft count of the indictment was dismissed. At the guilty plea hearing, the assistant district attorney set out the following factual basis for the crime:

> Your Honor, had this matter gone to trial, the State would have offered evidence and presented testimony to establish that on or about April 15th of 2002, [the petitioner] entered into Style America, a business in Smyrna, causing damage to the back door. When he entered into Style America, there was a small amount of change . . . . That was listed as being taken from the business. While inside Style America, he busted a hole through Style America's walls into the next business over, which was . . . Sally's Beauty Salon. In any event, your Honor, he busted a hole through one wall, went into the other one. He went into the beauty salon and set off the alarm. He exited back through the initial hole and went out through the back.
>
> He was picked up later after some instances, I believe occurring in Sumner County, where he made statements regarding this as well. That was in October of 2002. Detective Rick Hall with the Smyrna Police Department interviewed [the petitioner]. He gave a written statement verifying him stopping in the parking lot, breaking into the first business, taking some change, stated that there was no money in there, rather bills in there, but he did take the change, busted the hole through the wall to go into the next business. And that's when the alarm went off, and that's when he admitted to leaving through the same hole and leaving out through the back door of Style America.

At the guilty plea hearing, the petitioner stated that he understood the trial court would be making a later determination as to whether his sentence would run concurrently or consecutively to his Sumner County sentences and asked if there was anything in particular the court would consider in its decision. The trial court responded:

> Well, I'd be looking for what you tell me more than anything else. I think you know your record. You know what your record reflects. I don't know what your record reflects yet. I understand it's extensive, mostly burglaries. How you've cooperated with me, with the investigation of this crime, and so forth would have about as much bearing on it as anything, or lack of cooperation, whichever it was. You're not going to be able to convince me that you've changed, are you?

When questioned by trial counsel, the petitioner acknowledged that trial counsel had reviewed the negotiated plea agreement with him the previous day, that he had signed it, and that it correctly stated the agreement he had reached. Trial counsel asked the petitioner whether there was anything further he needed to do on the case other than to prepare for the upcoming sentencing hearing. The petitioner said that an officer who had interviewed him in the jail had promised to testify on his behalf about his cooperation with the police. Trial counsel responded that he could subpoena that officer to testify at the petitioner's sentencing hearing.

At the November 30, 2004, sentencing hearing, the State introduced the petitioner's presentence report, which reflected an extensive history of prior convictions. The forty-five-year-old petitioner acknowledged that his criminal record was substantial, that he had been incarcerated "five to six times," and that he understood he would have to serve the ten-year sentence in the instant case consecutively to the sentence for a conviction for which he had been on parole at the time he committed the instant offense. The petitioner explained that his criminal record included so many burglaries because "that was what [he] did the best" and "what [he] . . . knew how to make money." He stated that he committed the burglaries to support his drug habit but since that time had stopped using drugs and intended to abandon his former life of crime. He described the various self-improvement classes he had taken during his recent incarceration and introduced as a collective exhibit several certificates he had earned upon completing drug and alcohol classes, as well as a letter of recommendation from the instructor of an auto mechanics class in which he was currently enrolled. He stated that he was a high school graduate.

The petitioner testified that he fully cooperated with the police and assisted them in recovering a number of stolen items because he was tired of his former lifestyle: "[W]hen I was arrested . . . I just decided to come clean because I was just tired. I was just tired of the drugs and, you know, taking from people. . . . I just don't want to be doing it no more." On cross-examination, he acknowledged that his cooperation with the authorities had led to a number of his cases in Sumner County being retired, including thirty-four counts of burglary, six counts of attempted burglary, sixteen counts of theft under $500, three counts of theft over $1000 but under $10,000, twenty-eight counts of vandalism under $500, and three counts of vandalism over $500.

At the conclusion of the sentencing hearing, the trial court found the petitioner to be a "professional criminal who has knowingly devoted much of his lifetime to criminal acts as a major source of livelihood." Accordingly, the court ordered that the petitioner serve his ten-year Rutherford County sentence consecutively to the effective twenty-year sentence he had received for his Sumner County convictions.

On August 8, 2005, the petitioner filed a *pro se* petition for post-conviction relief in which he claimed that his guilty plea was unknowing and involuntary and that he received ineffective assistance of counsel. Following the appointment of post-conviction counsel, the petitioner filed an amended petition in which he alleged that trial counsel was ineffective for, among other things, failing to fully explain the law regarding consecutive versus concurrent sentencing; failing to properly investigate the case; and failing to call witnesses at the sentencing hearing.

At the July 21, 2006, evidentiary hearing, trial counsel, who said he had been practicing law in Rutherford County for eighteen years, testified that he was appointed to represent the petitioner on his arraignment day. He said that the petitioner was "very interested" in trying to get an offer from the State that involved running his Rutherford County sentence concurrently to his Sumner County sentences. According to trial counsel, he explained to the petitioner, and the petitioner understood, that he would have to serve the Rutherford County sentence consecutively to the sentence for the offense for which he had been on parole at the time he committed the crimes.

Trial counsel testified that the State's initial offer "was 12 years at 45 percent, running consecutive on the burglary and dismiss the theft." The petitioner, however, rejected that offer. Trial counsel then made a counteroffer to the State:

> [The petitioner] never disputed with me that he didn't do the offense that he was charged with. His only concern was trying to get it to run concurrent with that other sentence that he had. So I went back and talked to the District Attorney about the possibility of doing that. And I believe [the prosecutor] told me that he wouldn't agree to run it concurrent but if [the petitioner] wanted to try to settle his case and at least have the opportunity to ask, that that day only he would make an offer of ten years and then set it for a hearing and let the Judge decide how it would run.

Trial counsel testified that he received and reviewed a packet of discovery from the State. However, to the best of his recollection, he never interviewed Detective Rick Hall, the officer who took the defendant's statement or spoke to any other witnesses in the case. He said he recalled discussing the petitioner's "very extensive prior record" and its likely impact on the trial court's sentencing determinations: "And I distinctly remember telling [the petitioner] the odds were not good based on his prior record that he was going to get concurrent sentencing, but under the offer of the State, he could at least ask for it. And he said, well, that's what I want to do." Trial counsel said the petitioner never disputed that he had committed the crime and gave him no reason to believe that his statement should be suppressed. To the contrary, the petitioner "wanted it brought out that he did give statements and did cooperate because he felt like that was maybe his only way to get the possibility to have concurrent sentencing."

Trial counsel said he believed that the State took the petitioner's cooperation with the authorities into consideration when offering him the plea agreement, which provided for him to be sentenced as a persistent, rather than career, offender and offered the possibility of concurrent sentences. Prior to the guilty plea hearing, the petitioner never mentioned anything to him about subpoenaing officers to testify on his behalf. Trial counsel was unable to say why he did not subpoena Detective Hall to testify at the sentencing hearing. He pointed out, however, that the State had announced to the trial court that the petitioner had cooperated and given a statement to police. He also agreed that he thoroughly covered the petitioner's level of cooperation with authorities during his examination of the petitioner at the sentencing hearing.

The petitioner testified that trial counsel spoke to him on three different occasions for only "a couple of seconds" each time. During the first meeting, trial counsel informed him that the State had offered eight years. The petitioner said he told trial counsel that he would accept the offer if the sentences were run concurrently. When trial counsel came back, he informed the petitioner that the State would give him ten years if he would agree to "go under a Judge sentencing hearing." The petitioner testified that he and trial counsel discussed subpoenaing Detective Hall prior to the date of his guilty plea hearing. According to the petitioner, he did not learn that Detective Hall would not be testifying until he was at the sentencing hearing, when trial counsel informed him that they did

not need Detective Hall's testimony. He said he would never have pled guilty had he known that Detective Hall would not testify on his behalf at sentencing.

On cross-examination, the petitioner acknowledged that he was able to inform the court about his cooperation with authorities. He agreed that no one forced him to enter his plea, that he understood what he was doing, and that he had entered his plea knowingly and voluntarily. He also acknowledged that trial counsel never promised him that he would receive concurrent sentencing. The petitioner further testified that he had not spoken with Detective Hall since the day he gave his statement. He said he did not know what Hall's testimony would have been at the sentencing hearing and could "only imagine" what he would have said. Finally, the petitioner stated that he and post-conviction counsel had agreed that it would be best for the petitioner if they did not subpoena Detective Hall as a witness at the evidentiary hearing.

On September 15, 2006, the post-conviction court issued an oral ruling denying the petition, which was subsequently entered as a written order on September 20, 2006. Among other things, the post-conviction court found that the petitioner's guilty plea was knowing and that he could not establish prejudice based on counsel's failure to subpoena Detective Hall to the sentencing hearing. With respect to this latter claim, the post-conviction court noted that it had considered the petitioner's uncontested testimony about his cooperation with police in its sentencing ruling. Thereafter, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

The petitioner contends that trial counsel was ineffective for failing to adequately investigate his case. Specifically, he complains of counsel's failure to conduct any factual investigation or to subpoena Detective Rick Hall to testify on the petitioner's behalf at the sentencing hearing. The

petitioner claims that if he had known that the officer was not going to testify at his sentencing hearing, he would not have pled guilty but instead would have taken his chances at trial.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

We conclude that the record supports the post-conviction court's finding that counsel provided effective representation. Trial counsel testified that he made no guarantees to the petitioner with respect to the outcome of the sentencing hearing and, in fact, specifically informed him that his substantial criminal record made it unlikely that the trial court would order concurrent sentencing. Trial counsel acknowledged that he did not subpoena Detective Hall to testify at the sentencing hearing, as requested by the petitioner, and said that he did not know why he had not done so. However, in his opinion Detective Hall's testimony was unnecessary since the State did not contest the fact that the petitioner had cooperated with the authorities and the petitioner was able to fully relate his cooperation to the trial court. Trial counsel explained that he did not challenge the admissibility of the petitioner's confession because the petitioner never indicated to him any facts that would support a motion to suppress. Moreover, suppressing the confession would have been

counterproductive to the petitioner's stated objection of emphasizing his full cooperation with the police.

Even if the petitioner could establish that trial counsel was deficient for failing to call Detective Hall as a witness at the sentencing hearing, he cannot show that he was prejudiced as a result of that failure. The petitioner did not call Detective Hall as a witness at the evidentiary hearing and testified that he could only guess as to what Detective Hall's testimony would have been. As we have previously stated:

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.

Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In sum, the petitioner has failed to show that counsel was deficient in his representation or that he would not have pled guilty were it not for counsel's alleged deficiencies. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

### III. Involuntary Guilty Plea

In an interrelated claim, the petitioner also contends that his guilty plea was not knowingly, voluntarily, or intelligently entered. He asserts that he entered his guilty plea only because he believed that trial counsel was going to subpoena Detective Hall to testify on his behalf at the sentencing hearing.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, in Mackey, our supreme court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she

fully understands the plea and its consequences.  Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.  Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination.  Blankenship, 858 S.W.2d at 904.  These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.  Id. at 904-05.

The transcript of the guilty plea hearing reflects that the petitioner responded appropriately when asked if he understood the various constitutional rights as described by the trial court, if he understood he was waiving certain rights by pleading guilty, whether he understood his guilty plea, and whether he was entering his plea knowingly and voluntarily.  The petitioner informed the trial court that he was not under the influence of drugs and fully understood what he was doing in entering the plea.  He also said that he understood that the trial court would be making a later determination as to whether his sentence would run consecutively or concurrently to his Sumner County convictions.   The record further reveals that the petitioner was a high school graduate and had a very extensive criminal history, which evidenced his obvious familiarity with the criminal court system and criminal court proceedings.   We, therefore, conclude that the petitioner's guilty plea was knowingly, intelligently and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to show either that trial counsel was ineffective or that his guilty plea was unknowing and involuntary.  Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

-8-